

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

June 1, 2023

**Via ECF:**
The Honorable Katharine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   **Rivera v. Eastland Assoc Corp. et al**
      Civil Docket No.: 22-cv-00707 (KHP)

Dear Judge Parker:

Our office represents Plaintiff Santos Rivera ("Plaintiff" or "Rivera") in this FLSA matter, and we respectfully submit this motion, jointly with counsel for Eastland Assoc Corp., and Benedetto Cupo, as an individual (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached following extensive good faith settlement discussions among the parties during the litigation in this matter.

The parties respectfully submit this Motion in support of their position that the parties' Settlement Agreement is fair and reasonable, and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the parties' Settlement Agreement.

## I. The Monetary Terms of the Settlement Agreement are Fair and Reasonable

### a. The Settlement Amount

The parties agreed to resolve this matter for the total amount of Twenty Five Thousand Dollars ($25,000.00), which is inclusive of all wages, penalties, attorneys' fees, and costs.

### b. Plaintiff's Position

Plaintiff brought this action against the Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that he was not paid any proper overtime compensation when he worked in excess of forty (40) hours per week. Plaintiff's claims arise out of his employment by Mr. Cupo and the Defendants at

Eastland Assoc Corp., located at 16 Black Hawk Rd., Scarsdale, NY 10583. The Complaint also alleges that the individual Defendant was Plaintiff's employer within the meaning of the FLSA.

Plaintiff was employed at Eastland Assoc Corp. from in or around October 2017 until in or around November 2017, and from in or around January 2021 until in or around September 2021, as a carpenter and a construction worker, while performing related miscellaneous job duties and tasks for Mr. Cupo at Eastland Assoc Corp., and at job sites located throughout New York County. Under the FLSA and NYLL, Plaintiff's federal and state law claims are subject to statute of limitations periods of 3 and 6 years from the date of the filing of the Complaint, respectively. The Complaint was filed on January 27, 2022. As such, the relevant statutory period encompasses the period of January 27, 2016, through January 27, 2022 (the "relevant statutory period.").

Plaintiff alleges that during this period, he regularly worked six days per week, (generally excluding Sundays), equating to a total of approximately seventy-five (75) hours per week during his employment by Defendants.

Plaintiff further alleged that despite regularly working in excess of forty (40) hours per week, he was paid by Defendants a flat rate of approximately $30.00 per hour, for all hours worked, from in or around October 2017 until in or around November 2017 and from in or around January 2021 until in or around September 2021, which did not properly compensate him at a rate of time-and-a-half (1.5) his regular rate of pay, for Plaintiff's hours worked in excess of forty (40) hours per week during the relevant statutory period.

Plaintiff further alleged that Plaintiff was paid this same flat amount even for his overtime hours regularly worked each week, and this rate of pay did not change nor increase, despite the fact that Plaintiff regularly worked approximately 35 hours of overtime per week for the Defendants.

In total, Plaintiff alleged approximately $25,000.00 in unpaid overtime wages, in addition to an equal amount in liquidated damages pursuant to, and as authorized by the FLSA, and any statutory damage(s) and penalties, in chief, arising from the absence of NYLL-compliant wage notice(s) and wage statement(s) violations under NYLL § 195 *et seq*.

This figure, however, assumed that the Plaintiff would be 100% successful in establishing all of his claims as to the dates of his employment, the hours worked each and every week of the relevant statutory period, and proving that he did not receive any proper overtime compensation at all during this statutory period.

Although Plaintiff believed that he could recover on all his above claims, Plaintiff preferred a guaranteed payment through a Court-approved settlement. Plaintiff understood the risks of continued litigation and recognized the factual disputes as to the dates of his employment, the number of hours worked each week and the rate of pay that he received and Defendants' potential witness testimony and Defendants' records as to the dates of Plaintiff's employment and hours worked. The fact that these disputes may not have been resolved until a trial at a much later date favored Plaintiff's decision to settle early in the litigation process. Furthermore, Plaintiff considered the economic realities of Defendants' business and the possibility of obtaining a

judgment on which he would not be able to collect at a much later time in the future absent the instant agreement.

### c. Defendants' Position

Eastland Assoc. was formed on or about February 19, 2020. Defendant Cupo runs and operates Eastland Assoc, which is in the construction industry. Plaintiff worked for Eastland Assoc. in 2021 at two different work sites: 1227 Broadway and 255 W. 34th Street. Plaintiff worked approximately 20 weeks in total for Eastland Assoc. Plaintiff's initial rate of pay was $25 per hour and then it was raised to $30 per hour. Eastland Assoc. kept time records for its employees. Employees were paid for their one hour meal period, even though no work occurred during their meal periods. Notably, meal periods are not compensable time under either New York or federal law. *See* 29 CFR 785.19. According to the time records and payroll records, Eastland Assoc contends that there is no wages owed to Plaintiff.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $25,000.00. The parties believe that this amount is reasonable considering the claims and defenses asserted by the parties as well as the economic realities of the Defendants' business. Moreover, the settlement was only reached following extensive settlement discussions among the parties during the litigation phase in this matter, which included, without limitation, the parties attending a Court-annexed mediation session on June 22, 2022 and continued negotiations thereafter. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiff and the dates of Plaintiff's employment, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

### II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

The parties in this matter have agreed to a general mutual release of all claims in this action. This was carefully negotiated during the mediation as the parties wish to resolve any and all claims that were or could have been asserted against each other. The parties believe that the releases provided for in the Agreement are fair and reasonable and part of the parties' compromise to reach a settlement and gives each party "peace of mind" that they will not be subject to any other litigation. Furthermore, the Plaintiff is no longer employed by Defendants and has no ongoing

relationship with Defendants such that it would affect their rights as an employee going forward. Additionally, Plaintiff has no other known claims against the Defendants. Defendants know that all potential claims against them have been resolved by the Agreement. Plaintiff also gets the benefit of knowing that no counterclaims or future claims can be brought against her now or in the future.

Since *Cheeks* was decided, courts in both districts of this Circuit have approved mutual general releases in a number of cases. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("there is nothing inherently unfair about a release of claims in an FLSA settlement"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) ("Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable"); *Geskina v. Admore Air Conditioning Corp.*, 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("A general release of the kind proposed in this case, with [a] former employee[ ] who ha[s] no ongoing relationship with the employer, makes sense in order to bring complete closure") (internal quotations omitted); *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving agreement containing "mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement [was] signed"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure"). Like in the cases cited above, the parties here have agreed to a *mutual* general release. As such, the Agreement will provide closure to both parties and allow them to "'walk[] away from their relationship … without the potential for further disputes.'" *Lola*, 2016 WL 922223, at *2 (quoting *Souza*, 2015 WL 7271747, at *5).

Furthermore, the Settlement Agreement does not contain any confidentiality or overbroad non-disparagement provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.   Distribution to the Plaintiff and Requested Attorneys' Fees and Expenses

#### a.  Distribution to the Plaintiff

The parties agreed to a settlement of $25,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiff will recover $14,765.34, after requested attorneys' fees, and reimbursement of costs and expenses, in the total amount of $10,234.66.

#### b.  Plaintiff's Counsel's Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $2,852.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $402.00

- the costs of service of the Summons and Complaint on Defendants in this matter: $1,280.93
- the costs of serving court orders (and subpoenas) in this matter: $222.43
- the costs associated with party depositions: $946.64

Accordingly, Plaintiffs' counsel respectfully requests one-third of the settlement amount less the above expenses ($2,852.00), or $7,382.66 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees, and expenses, in this matter is $10,234.66.

The settlement funds broken down into their component parts is as follows:

**Settlement Amount:** $25,000.00
**Attorneys' Expenses:** $2,852.00
**Settlement less Expenses:** $22,148.00 ($25,000.00 - $2,852.00)
**Requested Attorneys' Fees:** $7,382.66 ($22,148.00 / 3)
**Total payable to Attorneys:** $10,234.66 ($7,382.66 + $2,852.00)
**Total payable to Plaintiff:** $14,765.34 ($25,000.00 - $10,234.66)

Our office and the Plaintiff have a retainer agreement that is reduced to writing and is signed by the Plaintiff. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel and the recovery secured through their efforts. Plaintiff's counsel has advocated for their client throughout the negotiation process and believes that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

IV.   **Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of good faith negotiations. Both parties were represented by experienced and competent counsel who specialize in this area of law and the early settlement allows both sides to avoid the anticipated costs and burdens of protracted litigation. As such, we respectfully request that the Court approve the Settlement Agreement, in its entirety.

We thank the Court for its kind consideration on this matter, and we and remain available to provide any additional information.

Respectfully submitted,

*Avraham Y. Scher*
Avraham Y. Scher, Esq.